## POTTS *v.* STATE.

Opinion delivered February 7, 1927.

1.  LARCENY—SUFFICIENCY OF EVIDENCE.—Evidence in a prosecution for grand larceny *held* sufficient to sustain a conviction.
2.  CRIMINAL LAW—EXCLUSION OF EVIDENCE—PREJUDICE.—Where it was a question whether defendant had a certain conversation with the prosecuting witness in defendant's office, it was error to exclude the testimony of a witness which tended to identify the prosecuting witness as the person who had the alleged conversation with defendant.

Appeal from Union Circuit Court, First Division; *L. S. Britt,* Judge; reversed.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J.    Appellant was convicted under an indictment charging him with the crime of grand larceny, alleged to have been committed by stealing a sewing machine, the property of Rose Tucker.    For the reversal of the judgment appellant insists that the verdict of the

jury was contrary to the law and the evidence, and that the court erred in excluding certain testimony offered in his behalf.

We think the testimony is sufficient to sustain the verdict, and no error was assigned in giving and in refusing to give instructions.

A brief summary of the testimony follows: Nate Tucker, a colored man, was confined in jail on a charge of possessing and transporting intoxicating liquor. He testified that appellant, who is a practicing attorney, came to the jail to see a client, and, while there, solicited witness' case, and procured from witness a note for $100 as an attorney's fee. Appellant ascertained where Tucker lived, and went out to Tucker's home, where he met Rose Tucker, the wife of the prisoner. Appellant discussed with Rose Tucker the question of his fee, and brought her to his office, where the discussion was continued. A few days later appellant went to the home of Rose Tucker, and, finding her absent, took from her house a talking machine and a sewing machine. This was done without the knowledge or consent of either Rose Tucker or her husband. The property was shown to be of a greater value than $10, and appellant was found guilty of grand larceny and sentenced to a term in the penitentiary.

Appellant admitted taking the sewing machine and talking machine in the absence of Rose Tucker, but he testified that he did so pursuant to an agreement with her that he should take them and allow a credit therefor of $50 on the fee.

J. E. Bradley was called as a witness for appellant, and was interrogated concerning a conversation between appellant and Rose Tucker in appellant's office. Rose Tucker was called in for identification by the witness, and, when she appeared, he was examined as follows:

"Q. Is that she? A. I think so. She is not dressed the same. Q. Do you state that she is the same woman? A. To the best of my knowledge, yes sir. Q. You may state whether or not she came in the room and made this statement, or this in substance, to Mr. Potts: 'We can't

get the money; you go out and get those machines and I will pay the balance of the money today, this evening or tomorrow evening,' and if Mr. Potts, in reply to what she said, stated, 'Well, I have not got time to go out there now, but I will look after it just as soon as I can'?'' (The State objects, as the time is not sufficiently placed, and the party whom he alleges to have made the statement is not identified).   By the court: ''Q. Do you say this was the woman who made the statement in the office?   A.   To the best of my knowledge.   Q.   Will you say this is the woman who made the statement?   A.   I would not say for sure.   (Objection sustained.   Exception saved).   Q. At the time you were in Mr. Potts' office was there a negro woman in there?   A.   Not when I went in there.   Q. During the time you was there did a negro woman come in?   A.   Yes sir.   Q.   State whether or not you heard a conversation between her and Mr. Potts?   A.   I heard part of the conversation.   Q.   Do you know what they were talking about?   (State objects.   Objection sustained.   Exception saved).   By the court: I will rule that the time is sufficiently placed, but the identification is insufficient.''

It is then recited that the above testimony of Bradley was withdrawn by agreement of both parties.

Appellant was then called as a witness, and testified that, in a conference which he had with Rose Tucker in his office, she agreed that he might go to her house and get the machines and credit them as a $50 payment on the fee, and that Bradley was present in his office at the time.

Taylor Potts, a brother of appellant, testified that he was present in his brother's office and heard this conversation between appellant and Rose Tucker, and that Bradley was also present.

Thereafter Bradley was recalled as a witness and was examined as follows: ''Q. You have been on the stand before in this case?   A. Yes sir. Q. Do you know about what day of the month it was that you were in the office of Hugh D. Potts—had you ever been there before that day?   A. No sir.   Q. What time of day were you there?

A.  Somewhere about 12 o'clock.  Q.  You have not been talked to since you left the witness stand?  A.  No sir. Q.  When this negro woman came into the office and talked to Mr. Potts, I will ask you if she stated, in substance, this:  'Mr. Potts, I can't get the money; you go on out · and get the machines, and I will get you the rest of the money today or tomorrow or the next day;' and if Mr. Potts did not reply, 'I am busy now, and I don't know whether I can go out there today or not, but I will go as soon as I can'?  (State objects).  By the court:  Q.  If you can testify that Rosie Tucker made such a statement as that, you may answer the question?  A.  I don't know her name.  Q.  Can you say she was the woman who made the statement?  A.  To the best of my knowledge.  Q.  Answer my question?  A. No sir.  Objection sustained. Defendant excepts."  Counsel for the defendant then stated:  "We put Mr. Potts (appellant) on the stand and he said this was the woman who was in his office when Mr. Bradley was there, and if we identified her as being the woman, this man can testify.  By the court:  Mr. Potts cannot testify for this witness.  (Objection overruled.  Exceptions saved)."

We think this ruling was erroneous and necessarily prejudicial.  The defense was that Rose Tucker, the owner of the property, had consented that appellant might have it as a credit on the fee he had agreed to charge her husband.  It was the theory of the State that no such conversation had occurred.  Appellant and his brother testified that there was such a conversation and that Bradley was present when it occurred.  Bradley stated that he did not know Rose Tucker, and he was not positive in his identification of her, although he did state, as appears from the testimony of Bradley, set out above, that he thought the woman presented to him for identification at the trial in the courtroom was the woman he had seen in appellant's office.  Moreover, appellant and his brother, who knew Rose Tucker, had testified that it was she who was in appellant's office at the time Bradley was in there, and, if this were true, it would have been compe-

tent for Bradley to have testified what that woman said, although he had been uncertain in his own identification of her or had been unable to identify her at all. But we think that his own identification of her was sufficient to make the proffered testimony admissible. Its value would have depended upon the jury's opinion of the witness' credibility. They might have regarded his testimony as untrue, just as they did the testimony of appellant and his brother. The jury might also have thought that Bradley's identification of the witness was not sufficiently certain to make the testimony very important. But these were all questions for the jury. But, in view of Bradley's testimony that he thought the woman who appeared in court was the woman he had seen in appellant's office, and the additional testimony of appellant and his brother that the woman present in appellant's office when Bradley was there was Rose Tucker, we think it was clearly erroneous for the court to refuse to permit Bradley to testify concerning the conversation between appellant and the woman who was in appellant's office.

The judgment of the court below must therefore be reversed, for the error indicated, and the case will be remanded for a new trial.